**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                          |     |                             |
|--------------------------|-----|-----------------------------|
| MIGDALIA C.,             | :   |                             |
|                          | :   |                             |
|          Plaintiff,      | :   |                             |
|                          | :   |                             |
| v.                       | :   | Civil No. 3:21-cv-00592-RAR |
|                          | :   |                             |
| KILOLO KIJAKAZI, Acting  | :   |                             |
| Commissioner of Social   | :   |                             |
| Security,                | :   |                             |
|                          | :   |                             |
|          Defendant,      | :   |                             |

**RULING ON PENDING MOTIONS**

Migdalia C. ("plaintiff") appeals the final decision of the
Commissioner of Social Security ("the Commissioner" or
"defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner
denied plaintiff's application for Social Security Disability
Benefits in a decision dated February 26, 2020. Plaintiff timely
appealed to this Court. Currently pending are plaintiff's motion
for an order reversing and remanding her case for a hearing (Pl.
Br., Dkt. #21) and defendant's motion to affirm the decision of
the Commissioner (Def. Br., Dkt. #28).

For the following reasons, plaintiff's motion to remand is
GRANTED and the Commissioner's motion to affirm is DENIED.

**STANDARD**

"A district court reviewing a final . . . decision [of the
Commissioner of Social Security] pursuant to section 205(g) of
the Social Security Act, 42 U.S.C § 405(g), is performing an

appellate function." <u>Zambrana v. Califano</u>, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. <u>Id.</u>; <u>Wagner v. Sec'y of Health and Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. <u>Schauer v. Schweiker</u>, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

accept as adequate to support a conclusion.'" <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . .." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## **PROCEDURAL HISTORY**

Plaintiff initially filed for disability insurance benefits under Title II Social Security Disability Insurance Benefits and Title XVI Supplemental Security Income on March 21, 2018. (R. 11.) Plaintiff alleged that she has osteopenia, arthritis in the hip, torn tissue in the hip, sleep apnea with continuous positive air pressure ("CPAP") machine usage, and cysts growing on the hip, with a disability onset date of April 1, 2017. (R. 310, 314, 353.) Plaintiff's initial application was denied on July 10, 2018, and again upon reconsideration on October 16, 2018. (R. 174, 187, 196.) Plaintiff then filed for an administrative hearing, which was held by ALJ Aletta (hereinafter "the ALJ"). (R. 83–120.) The ALJ issued an

---

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

unfavorable decision on February 26, 2020. (R. 11–26.) On February 26, 2021, the Appeals Council denied plaintiff's request for review. (R. 1.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #21.)

## THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from her onset date of April 1, 2017, through her date last insured ("DLI"), which is September 30, 2022. (R. 11–26.) At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity between her alleged onset date and her DLI. (R. 14.) At step two, the ALJ found that plaintiff had the following severe impairments: left hip trochanteric bursitis, partial undersurface tear of the left hip, peri labral cyst at the left hip, right knee osteoarthritis, and chronic headaches. (R. 14.)

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926). (R. 16.) The ALJ specifically considered plaintiff's osteoarthritis and left hip focal undersurface partial tear under Listing 1.02 for major dysfunction of joints, but found that the plaintiff did not meet the base requirements of a gross

5

anatomical deformity. (R. 16.) The ALJ considered the plaintiff's use of a cane under Listing 1.00(B)(2)(b) for ineffective ambulation but found that the plaintiff did not meet the base requirements, which were the use of a walker, two crutches, or two canes. (R. 16.) Lastly, the ALJ considered the plaintiff's chronic migraines under Listing 11.02 for epilepsy, however, the ALJ found that the plaintiff did not meet the requirements of having seizures with the required frequency despite compliance with treatment. (R. 16.) The ALJ found that the plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: Plaintiff can stand and walk for up to four hours each during an eight-hour workday. She must use a cane for walking. She can occasionally climb ramps and stairs, she cannot climb ladders, ropes, or scaffolds. She can frequently balance and stoop, and can occasionally kneel, crouch, and crawl. She cannot work at unprotected heights. She cannot operate machinery having moving mechanical parts which are exposed. She can work in environments having a moderate noise level. She must avoid concentrated exposure to lighting brighter than fluorescent lighting ordinarily found in office environments.

(R. 16–17.) At step four, the ALJ concluded that plaintiff could perform her past relevant work as a customer order clerk as generally performed, thereby ending the evaluation process. (R. 24.)

**DISCUSSION**

The plaintiff asserts that the ALJ failed to provide sufficient reasoning for finding the medical source opinions of two treating physicians unpersuasive, failed to sufficiently support his RFC determination, used factually incorrect statements to support his decision, and failed to develop the administrative record. (Pl. Br. 2, 3, 8, 9.)

**I.   ALJ's Evaluation of Medical Source Opinions**

The plaintiff argues that the ALJ failed to adequately support his finding that the opinions of Dr. Mark Jonker and Dr. Matthew Reuter[4] are unpersuasive. (Pl. Br. 5-9.)

*A. Factually Incorrect Statements*

The ALJ's assertions in support of his RFC determination and his findings that the opinions of Dr. Reuter and Dr. Jonker were unpersuasive include several errors and inconsistencies in the factual interpretation of the record. (R.23.) These errors and inconsistencies are significant because the ALJ relies on these interpretations of the record to make his RFC determination. (R. 23—24.) If an ALJ makes "factual errors in evaluating the medical evidence," his decision denying benefits "is not supported by substantial evidence." Conyers v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 39919, *59 (S.D.N.Y. Mar. 12,

---

[4] Although the ALJ's opinion consistently refers to Dr. Reuter as "Dr. Deuter," the parties appear to agree that the correct name is Dr. Reuter. (Dkt. #21-1 at 4, n.1; Dkt. #28-1 at 4.)

2019)(citing <u>Pratts v. Chater</u>, 94 F.3d 34, 38 (2d Cir. 1996));
*see also* <u>Edel v. Astrue</u>, 2009 U.S. Dist. LEXIS 26270 at *15
(N.D.N.Y. Mar. 30, 2009) (ALJ's finding is "not supported by
substantial evidence where [the ALJ] relied primarily upon a
misstatement of the record"); <u>Wilson v. Colvin</u>, 213 F. Supp. 3d
478, 491 (W.D.N.Y. 2016)("although the ALJ provided 'specific'
reasons for discounting Plaintiff's credibility, the Court
cannot find that they were 'legitimate' reasons because they are
based on a misconstruction of the record").

The ALJ's assertion that Dr. Reuter "[did] not include an
examination to corroborate his findings," seems to be a
misstatement of the record because Dr. Reuter did indeed include
medical notes in the record. (R. 23, 663—678.) Dr. Reuter's
notes include descriptions of the plaintiff's "chronic low back
and L hip pain" as well as an account of how her right knee
injury was responding to physical therapy. Additionally, the
ALF's assertion that Dr. Jonker's opinion conflicts with his
treatment notes appears factually inaccurate because Dr. Jonker
did not submit any treatment notes into the record.[5] (R. 23.)

---

[5] The Commissioner's brief "acknowledges that, as plaintiff points out, there
are no treatment notes from Dr. Jonker in the record." (Dkt. #28-1 at 8.)
The Commissioner then speculates as to what the ALJ <u>might</u> have meant when he
made the misstatement. (Id.)  While the Court appreciates the Commissioner's
speculative explanation as to what the ALJ might have meant when he made the
misstatement, it was the responsibility of the ALJ to explain or articulate
the alleged inconsistency that he mentioned and supposedly relied upon in
reaching his decision.  "Without specific citations to the medical record
identifying specific portions that are inconsistent, the Court cannot
properly review the ALJ's decision, and claimants are deprived of an adequate

The ALJ made or relied on these misstatements of the record
to support his decision to find the medical opinions of Dr.
Reuter and Dr. Jonker unpersuasive for purposes of his RFC
determination. (R. 23.)  As discussed later in this opinion, it
is clear from the context that these misstatements were
material.  Therefore, the ALJ's RFC determination "is not
supported by substantial evidence." Conyers, 2019 U.S. Dist.
LEXIS 39919 at *59.

   *B. The ALJ's Analysis of the Opinions' Supportability and*
     *Consistency*

Plaintiff argues that the ALJ failed to provide adequate
support for finding the opinions of Dr. Reuter and Dr. Jonker
unpersuasive. For claims filed before March 27, 2017, the
regulations require the application of the "treating physician
rule," under which treating source opinions could receive
controlling weight provided they were not inconsistent with
other substantial evidence in the record. *See* 20 C.F.R. §
404.1527(c)(2). However, the regulations have done away with the
"treating physician rule" for claims filed after March 27, 2017.
The new regulations state that the ALJ "will not defer or give
any specific evidentiary weight, including controlling weight,

---

understanding of the reasoning behind the disposition of their cases." Crutch
v. Colvin, 2017 WL 3086606 at *8 (E.D.N.Y. July 19, 2017).  Here, there is no
dispute that the treatment notes that the ALJ said were "inconsistent" do not
actually exist.

to any medical opinion(s) or prior administrative medical
finding(s), including those from [the claimant's] medical
sources." 20 C.F.R. § 404.1520c(a).

The ALJ will consider medical opinions according to the
following factors: (1) whether objective medical evidence
supports and is consistent with the opinion; (2) the
relationship between the medical source and claimant; (3) the
medical source's specialty; and (4) other factors that "support
or contradict a medical opinion[.]" Id. §§ 404.1520c(c),
416.920c(c). The ALJ must explain how he considered the
"supportability" and "consistency" of the opinion but is not
required to explain how he considered the secondary factors
unless the ALJ finds that two or more medical opinions regarding
the same issue are equally supported and consistent with the
record but not identical. 20 C.F.R. § 404.1520c(b). Here, the
ALJ relied almost entirely on the supportability and consistency
factors to evaluate the opinions of Dr. Reuter and Dr. Jonker.
(R. 23.)

In terms of "supportability," "[t]he more relevant the
objective medical evidence and supporting explanations presented
by a medical source are to support his or her medical opinion(s)
or prior administrative finding(s), the more persuasive the
medical opinion(s) or prior administrative finding(s) will be."
Id. §§ 404.1520c(c)(1), 416.920c(c)(1). In terms of

"consistency," "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

Although the treating physician rule has technically been eliminated from regulations, courts within the Second Circuit have proven that the essence of the treating physician rule lives on. Courts have held that

> [a]lthough the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning weight to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all the medical opinions. The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability, which are the same factors that formed the foundation of the treating source rule.

Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020)(internal quotations and citations omitted). See also Acosta Cuevas v. Comm'r of Soc. Sec., No. 20CV0502AJNKHP, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021)("While the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")

Here, the ALJ failed to sufficiently explain why he found the opinions of Dr. Reuter and Dr. Jonker unpersuasive. (R. 23.) Although the ALJ is not required to address how he weighed the relationship between the plaintiff and a physician, he is required to articulate how the weight of each opinion was assigned. Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021)(quoting 20 C.F.R. §404.1520c(c)). However, the ALJ provides confusing and unsubstantiated reasons for why he found these opinions unpersuasive. (R. 23.)

Dr. Reuter and Dr. Jonker had significant treating relationships with the plaintiff. (R. 8—31, 101, 663-681.) The plaintiff was treated by Dr. Reuter four times between June 2019 and January 2020 and Dr. Jonker served as the plaintiff's primary care physician ("PCP") until June 2019. (R. 101, 663, 664—681.)

Addressing Dr. Reuter, the ALJ found his opinion unpersuasive and asserted that his report was inconsistent with medical evidence, he "[did] not include an examination to corroborate his findings," his opinions were nonspecific to functional or vocational limitations, and his questionnaire did not provide the option for abilities performed for more than two-thirds of an eight-hour workday. (R. 23.) As an initial matter, the ALJ asserts that Dr. Reuter's opinion is inconsistent with evidence in the record, but he did not point

to any specific evidence in the record that conflicted with Dr. Reuter's opinion. (R. 23.) In addition, the ALJ asserts that Dr. Reuter's opinion lacks support in the record because he "[did] not include an examination to corroborate his findings." However, as explained above, this statement is factually incorrect. Dr. Reuter's treatment notes appear in the record.[6] (R. 663—678.) Dr. Reuter's notes describe the plaintiff's chronic pain and response to physical therapy. (R. 663—678.) This error is particularly harmful to the plaintiff because Dr. Reuter's notes and opinion are more favorable to the plaintiff than the opinions of the Consultative Examiner ("CE") and the state agency medical evaluators. (R. 121—161, 555, 663—678.)

Next, the ALJ asserts that Dr. Reuter's opinion is nonspecific as to functional and vocational limits. (R. 23.) However, Dr. Reuter's opinion includes information regarding the plaintiff's ability to sit, stand, walk, stoop, climb, lift, raise her arms, lift her legs, and use her hands for fine and gross motor manipulation. (R. 560–561.) Dr. Reuter's opinion also includes the frequency and degree to which the plaintiff

---

[6] The Commissioner's brief argues that this misstatement can be dismissed because plaintiff saw Dr. Reuter four times, and the ALJ summarized each of those visits in the review of the medical treatment set forth in the decision. (Dkt. #28-1 at 4-5.)  However, the fact that the ALJ's misstatement was made and relied upon to justify the ALJ's conclusion is still concerning, despite the Commissioner's speculation as to what may have caused the misstatement.  The Court finds that this misstatement, coupled with the other explanations set for in this ruling, justify remand.

can perform the aforementioned activities. (R. 560–561.)
Finally, Dr. Reuter's opinion addresses the plaintiff's level of
pain, her time spent off-task throughout a workday, the number
of breaks she requires, and her use of an assistive device to
ambulate. (R. 560–561.) Notably, the report submitted by the CE—
whose opinion was given significant weight by the ALJ in his RFC
determination—included far fewer details on the plaintiff's
functional and vocational limitations. (R. 555) The CE, Dr.
Dodenhoff, submitted the following excerpt as his medical source
statement:

> The pt. is able to: sit, stand & walk using a cane;
> lift and handle objects, Hearing and speaking are
> intact. The pt. is able to understand, remember and
> carryout instructions. The pt. should be able to
> respond appropriately to supervision, coworkers and
> the pressures in a work setting.

(R. 555.)

The ALJ found Dr. Jonker's opinion unpersuasive and
asserted that Dr. Jonker's questionnaire did not provide the
option for abilities performed for more than two-thirds of an
eight-hour workday, his opined limitations were not functionally
or vocationally specific, his questionnaire was completed prior
to plaintiff's engagement in physical therapy, and Dr. Jonker's
opinion contradicted his own treatment notes. (R. 23.)

Regarding the functional and vocational specificity of the
restrictions, Dr. Jonker used a very similar opinion form as Dr.

14

Reuter and included the same detail on the plaintiff's limitations for sitting, standing, walking, stooping, climbing, lifting, motor function, raising arms and legs, and pain levels. (R. 529-530.) Again, the court understands this opinion to address the plaintiff's functional and vocational limitations and provide a more detailed description of the plaintiff's restrictions than the opinion of the CE. (R. 555.) Additionally, the assertion that Dr. Jonker's opinion conflicts with his treatment notes is not persuasive. The Court has reviewed the entire record and has not found any treatment notes from Dr. Jonker that could potentially conflict with his opinion.

The findings that the opinions of Dr. Reuter and Dr. Jonker are unpersuasive are especially significant given the opinions that were accepted and given persuasive weight. The CE examined the plaintiff only once and wrote a "generalized and nonspecific" opinion, yet his opinion was given persuasive weight. (R. 23.) Further, the two state agency medical evaluators did not examine the plaintiff and did not have access to her full medical record, but their opinion was also given persuasive weight. (R. 22-23.)

An ALJ must "*both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872

15

(7th Cir. 2000)). The ALJ's analysis of the opinions of Dr. Reuter and Dr. Jonker is confusing, contradicts his analysis of the CE and state agency medical evaluators' opinions, and contains misinterpretations of the record. (R. 23.) The ALJ asserts that the opinions of Dr. Reuter and Dr. Jonker are too general and nonspecific as to functional and vocational limitations, yet the ALJ accepted the CE's opinion which is far less specific. (R. 23.) Additionally, the ALJ asserted that Dr. Reuter submitted no medical notes to support his opinion, yet there are notes present in the record, and the ALJ cites to Dr. Jonker's notes in the record, even though no such notes exist. (R. 23.)

The ALJ has failed to substantiate his findings that the opinions of both Dr. Reuter and Dr. Jonker are inconsistent with the record and unsupportable, and in doing so, has failed to "articulate how the weight of each opinion was assigned." Jacqueline L., 515 F. Supp. 3d at 8.

## II.  The ALJ's Evaluation of Other Medical Opinions

The plaintiff asserts that the ALJ erred in finding the opinions of the CE, Dr. Dodenhoff, and the two state agency medical evaluators, Dr. Papantonio and Dr. Fine, persuasive. (Pl. Br. 3—4.) Looking first at Dr. Dodenhoff's opinion, the plaintiff argues that giving this opinion weight was erroneous because the ALJ acknowledged that Dr. Dodenhoff's opinion was

"generalized and nonspecific." (Pl. Br. 7.), (R. 23.) An ALJ must recontact a treating physician where the opinion is vague. Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). However, the failure to do so does not require remand *per se*. Remand is not required where "the record was sufficiently complete for the ALJ to make a substantially supported RFC determination." Moreau v. Berryhill, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *12 (D. Conn. Mar. 14, 2018).

The ALJ admitted in his ruling that the CE opinion was "generalized and nonspecific." The Court acknowledges that the CE is not a treating physician, however, seeing as how his opinion was the only examining physician opinion given persuasive weight, the Court believes that the ALJ had a duty to gather a more detailed opinion from Dr. Dodenhoff to create a sufficient RFC determination. (R. 22–24.)

Turning to the two state agency medical evaluators, the plaintiff argues that these opinions should not be given persuasive weight because the ALJ admits that the consultants did not have access to the full record. (R. 23) Further, the ALJ stated that he had to update their opinions to include limitations on walking and standing, a symptom that was reported consistently throughout the record. (R. 23)

Under The Code of Federal Regulations, "[a] medical source may have a better understanding of your impairment(s) if her or

she examines you than if the medical source only reviews evidence in your folder." 20 CFR §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). The fact that the state agency medical evaluators did not have access to the full record is not grounds for giving their opinions no weight. However, this opinion is especially weak given the fact that the only other opinion being considered is a non-treating physician's admittedly "nonspecific" opinion. (R. 23.) There is not enough concrete evidence being considered by the ALJ to create an accurate RFC determination.

### III. Development of the Record

The plaintiff asserts that the ALJ failed to develop the record by neglecting to request additional information from plaintiff's physicians before concluding that their opinions were unpersuasive. An ALJ has an affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83—84 (2d Cir. 2015).

The regulations clearly state that while the ALJ "will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report

incomplete." 20 C.F.R. § 404.1519n. However, the ALJ generally will not request a consultative examination until he has made "every reasonably effort to obtain medical evidence from [the claimant's] own medical sources." 20 C.F.R. § 404.1512.

In this instance, the ALJ made no note of requesting additional documents or clarification from either Dr. Reuter or Dr. Jonker before determining that their opinions were unpersuasive. (R. 23.) Part of the explanation the ALJ gave for his determination was that the opinions were not functionally or vocationally specific. (R. 23.) The Court finds that the ALJ had a duty to request additional information from these two physicians to attempt to remedy his concern that the opinions were too vague before making his determination. *See* Ruiz v. Commissioner of Social Security, 2020 WL 728814 at *11 (S.D.N.Y. Feb. 13, 2020).

The ALJ does not have a duty to request additional evidence where the evidence in the record is "adequate for [the ALJ] to make a determination as to disability." Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). However, this is not the case here. The record

contains only two opinions: the opinion of a CE which the ALJ admitted was "generalized and nonspecific," and the opinions of two state agency medical evaluators who did not examine the plaintiff and had an incomplete medical history on the plaintiff. (R. 22-23.)

Further, "[t]he plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record: '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (quoting Shinseki v. Sanders, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009)).

Here, the opinions that the ALJ found unpersuasive without seeking further information weighed in favor of plaintiff. Both opinions regarded the plaintiff's condition as more serious than the opinions of the CE and state agency medical evaluators, and both opinions would have precluded the plaintiff from any available work (according to the testimony of the Andrew Vaughn, Vocational Expert). (R. 22-23, 118, 529-533, 554-557, 560-562.)

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #21) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #28) is DENIED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgement. *See* 28 U.S.C. § 636(c)(3).

SO ORDERED this 16th day of August, 2022, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge